UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------X

KINGVISION PAY-PER-VIEW, LTD.,
as broadcast licensee of the December 2, 2000
Trinidad/Vargas Program,

**REPORT AND RECOMMENDATION**

Plaintiff,

04 CV 3623 (CBA)

-against-

EL EMPERADOR AZTECA RESTAURANT
CORP., doing business as EL EMPERADOR
AZTECA RESTAURANT, also known as
EL EMPERADOR AZTECA RESTAURANT,

Defendant.
------------------------------------------------------X

On May 16, 2001, plaintiff Kingvision Pay-Per-View, Ltd. (hereinafter "Kingvision") commenced suit against defendant El Emperador Azteca Restaurant Corp., d/b/a El Emperador Azteca Restaurant, a/k/a El Emperador Azteca Restaurant ("El Emperador"), and several other defendants,[1] alleging that they had engaged in the illegal theft of a closed-circuit telecast of the December 2, 2000 boxing match between Trinidad and Vargas, in violation of 47 U.S.C. §§ 553(a) and 605. Following the entry of a default judgment against defendant, the matter was referred to The Honorable A. Simon Chrein to conduct an inquest and to report and recommend the amount of damages to be awarded. On April 12, 2005, the case was reassigned to the undersigned.

For the foregoing reasons, this Court respectfully recommends that, pursuant to 47 U.S.C. §§ 605(e)(3)(C)(i)(II), 605(e)(3)(C)(ii), and 605(e)(3)(B)(iii), plaintiff be awarded $12,450.00 in

---

[1] See discussion infra at 3.

statutory damages and $222.50 in costs from the defendant, for a total of $12,672.50. It is further recommended that plaintiff's request for prejudgment interest be denied.

## FACTUAL BACKGROUND[2]

Plaintiff Kingvision entered into a closed-circuit television licensing agreement (the "Agreement"), in which plaintiff was granted the commercial rights to televise and distribute the December 2, 2000 Trinidad/Vargas championship boxing match via closed encrypted satellite signal and circuit televisions located in various bars, restaurants, theaters, arenas, and in private homes throughout New York. (Compl. ¶ 33; Lonstein Aff. ¶ 2).[3] In addition, the Agreement gave plaintiff the exclusive right to exhibit all undercard or preliminary bouts prior to the match (collectively, the "Event") at these closed circuit television locations. (Compl. ¶ 33). These closed-circuit locations could only obtain access to the broadcast by entering into a contractual relationship with plaintiff, which required each establishment to pay a sublicense fee to Kingvision. (Id. ¶¶ 33-35).

In order to receive access to the interstate satellite transmission of the Event, each participating establishment was provided with electronic decoding equipment and satellite coordinates necessary to receive the electronically coded or scrambled signal. (Pl.'s Mem. at 2). Authorized residential cable subscribers could also obtain transmission of the Event through their

---

[2]The facts as stated herein are derived from the Verified Complaint ("Compl.") filed under the original docket number, 01 CV 3263 (CBA), and from the Affidavit of Julie Cohen Lonstein, Esq., dated February 6, 2002, filed in support of the motion for default. Since defendant is in default, the facts are undisputed. See discussion infra at 5-6.

[3]Citations to "Compl." refer to the Complaint filed in this action on May 7, 2003; citations to "Pl.'s Mem." refer to the Plaintiff's Inquest Memorandum, dated March 17, 2005.

2

residential pay-per-view cable system. (Id.)

Plaintiff alleges that defendant El Emperador is a commercial establishment, located at 44-19 Broadway, Long Island City, New York 11103. (Compl. ¶ 23). Plaintiff further alleges that El Emperador did not enter into a contract with Kingvision to receive transmission of the Event. (Id. ¶¶ 36-38). On the night of the event, December 2, 2000, an auditor for plaintiff was present at El Emperador when he observed the Event being intercepted, received, and then televised to patrons of the defendant, without prior authorization. (Lonstein Aff. ¶ 3, Ex. A). According to the auditor's Affidavit, he observed 49 patrons in El Emperador while the Event was being displayed on a projection screen television set in the premises. (Id.)

## PROCEDURAL HISTORY

On May 16, 2001, plaintiff commenced this action, seeking statutory damages pursuant to 47 U.S.C. §§ 553 and 605, by filing the original summons and complaint under Docket No. 01 CV 03263 (CBA). In addition to naming El Emperador as a defendant in the original action, plaintiff named the following individuals or corporations as additional defendants: (1) John Doe, individually, and as an officer, director, shareholder and/or principal of El Emperador[4]; (2) Prospero Villalona, individually, and as an officer, director, shareholder and/or principal of Restaurant Salvadoreno Usuluteco ("Usuluteco"); (3) Usuluteco; (4) George Perez ("Perez"), individually, and as an officer, director, shareholder and/or principal of 45-08 Vernon Blvd. Corp.; (5) 45-08 Vernon Blvd. Corp.; (6) John Doe, individually, and doing business as Tardes

---

[4]Although John Doe, individually, and as an officer, director, shareholder and/or principal of El Emperador Restaurant was named as a defendant in the Verified Complaint, it appears that service was not perfected as to this individual.

3

Calenas Restaurant ("Tardes Calenas"); (7) Tardes Calenas; (8) John Doe, individually, and doing business as T. Ayala Candy Store ("T. Ayala"); (9) T. Ayala; and (10) Consuelo Quintero, individually, and as an officer, director, shareholder and/or principal of Especialidades Nativas Inc. ("Nativas"); and (11) Nativas. (Compl. ¶¶ 5-31).

Plaintiff served El Emperador on July 2, 2001, by delivering two copies of the Summons and Verified Complaint to an agent at the Office of the Secretary of State of the State of New York. (Lonstein Aff. Ex. E). Defendants Perez, 45-08 Vernon Blvd., and Tardes Calenas were also served at or about that time. (See Lonstein Aff. Exs. C, D). When these defendants, including El Emperador, failed to answer or otherwise respond to the complaint, plaintiff moved for entry of default as to these four defendants. The Clerk of Court then entered a default as to these defendants on February 12, 2002 under Docket No. 01 CV 3263 (CBA). Following entry of default, the district court referred the issue of damages to Magistrate Judge Chrein to conduct an inquest.

On November 8, 2002, Judge Chrein issued a Report and Recommendation, declining to recommend an award of damages as to El Emperador and several other defendants. (Rept. of Nov. 8, 2002 at 1, 7). Judge Chrein determined that because the defaulting defendants acted independently, and the claims asserted by plaintiff did not arise out of the same transaction or occurrence, plaintiff had improperly joined these defendants. (Id. at 5-6). He therefore recommended that plaintiff be required to commence separate actions against each defaulting defendant. (Id. at 7). By Order dated July 27, 2004, the district court directed the Clerk of Court to sever the co-defendants listed under the original docket number, and ordered plaintiff to proceed with separate actions against each of the defaulting defendants, by paying the appropriate

4

filing fees. (Order of July 27, 2004 at 1-2).

Thereafter, on August 16, 2004, plaintiff purchased a new docket number, 04 CV 3623, by paying the Court's $150.00 filing fee and naming El Emperador as the only defendant in the action under this docket number. According to plaintiff's counsel, on October 20, 2004, plaintiff then proceeded to re-serve El Emperador with a copy of Plaintiff's Inquest Memorandum bearing the newly purchased docket number. (Certificate of Service of Julie Cohen Lonstein, Esq.; Pl.'s Mem. at 8).[5]

On June 23, 2005, the Clerk of Court noted El Emperador's default and issued a certificate of default under the present docket number. Having received no opposition papers from the defendant, this Court reviewed the plaintiff's submission and reports as follows.

## DISCUSSION

1. Default

When a default is entered, the defendant is deemed to have admitted all of the well-pleaded factual allegations in the complaint pertaining to liability. See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992), cert. denied, 506 U.S. 1080 (1993); see also Hawthorne v. Citigroup Data Systems, 216 F. Supp. 2d 45, 47 (E.D.N.Y. 2002). For the purposes of an inquest, a court accepts as true all factual allegations in the complaint, except those claims relating to damages. See Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981).

---

[5]Citations to "Pl.'s Mem." refer to the Plaintiff's Inquest Memorandum, dated October 20, 2004.

5

Plaintiff alleges that the defendant violated 47 U.S.C. §§ 553(a)(1)[6] and 605(a) through the unauthorized reception of plaintiff's satellite communications. However, a court is not permitted to grant damages under both statutes for a single illegal transmission. See Int'l Cablevision, Inc. v. Sykes, 75 F.3d 123 (2d Cir.), cert. denied, 519 U.S. 929 (1996). Rather, the Second Circuit has stated that where a defendant is found to have violated both statutes, the court should award damages pursuant to Section 605. Id.; see also Time Warner Cable of New York City v. Taco Rapido Restaurant, 988 F. Supp. 107, 110 (E.D.N.Y. 1997).

Here, it is clear that the allegations in the Complaint establish the elements of liability necessary to state a claim under Section 605. Section 605(a), which provides, *inter alia,* that "[n]o person not being authorized by the sender shall intercept any radio communications and divulge or publish the . . . contents . . . of such intercepted communication to any person," 47 U.S.C. § 605(a), has been held to apply to the interception of cable communications originating as a satellite or radio transmission. See Int'l Cablevision, Inc. v. Sykes, 75 F.3d 123. See also Entertainment by J&J, Inc. v. Mama Zee Rest. & Catering Servs., Inc., No. 01-3945, 2002 U.S. Dist. LEXIS 13686, at * 4-5 (E.D.N.Y. May 16, 2002); Time Warner Cable of New York City v. Taco Rapido Restaurant, 988 F. Supp. at 109. Here, defendant's alleged conduct - - the unauthorized interception, receipt, and broadcast of the Event derived from satellite communications - - violates this statute.

Unlike allegations pertaining to liability, allegations in connection with damages are not deemed admitted in the context of a default judgment. The burden is on the plaintiff to establish

---

[6]Section 553(a)(1) provides, in pertinent part: "No person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law." 47 U.S.C. § 553(a)(1).

its entitlement to recovery. See Clague v. Bednarski, 105 F.R.D. 552, 553 (E.D.N.Y. 1985). While "the court must ensure that there is a basis for the damages specified in the default judgment, it may, but need not make the determination through a hearing." Fustok v. Conticommodity Servs., Inc., 122 F.R.D. 151, 156 (S.D.N.Y. 1988), aff'd, 873 F.2d 38 (2d Cir. 1989) (citing Transportes Aereos De Angola v. Jet Traders Inv. Corp., 624 F. Supp. 264, 266 (D. Del. 1985)).

In the instant case, plaintiff has submitted, *inter alia,* an inquest memorandum, affidavits from Ms. Lonstein and from plaintiff's Vice President, Donna K. Westrich ("Westrich"), the auditor's report and the Verified Complaint from the original docket number. Where, as here, the plaintiff has filed reasonably detailed affidavits and exhibits pertaining to the damages incurred and where the defendant has failed to make an appearance in the case, or respond and present evidence on the issue of damages, the Court can make an informed recommendation regarding damages without an evidentiary hearing.

2. Damages

Where, as here, a violation of Section 605 has occurred, plaintiff is entitled to elect statutory damages. Section 605 provides for penalties "for each violation of subsection (a) of this section . . . in a sum of not less than $1,000 or more than $10,000, as the court considers just." 47 U.S.C. § 605(e)(3)(C)(i)(II) (emphasis added). Although Section 605 requires the court to assess damages based on each "violation" of the statute, there is no statutory definition of "violation." Moreover, in cases such as this, involving the theft of services by a commercial establishment, it is often difficult to assess a precise figure.

In determining the amount of damages that can be imposed for each violation within the range of $1,000.00 to $10,000.00 per violation, Section 605 leaves the decision within the sound discretion of the court. See 47 U.S.C. § 605(e)(3)(C)(i)(II); see also Time Warner Cable of New York City v. Olmo, 977 F. Supp. 585, 589 (E.D.N.Y. 1997); Home Box Office v. Champs of New Haven, Inc., 837 F. Supp. 480 (D. Conn. 1993) (reducing an award from $250,000.00 to $10,000.00 for commercial broadcast of a boxing match). The factors to be considered in determining the appropriate amount of damages include the pecuniary loss sustained by the victim, any unlawful monetary gains by the defendant, and whether there have been repeat violations over an extended period of time. See Home Box Office v. Champs of New Haven, Inc., 837 F. Supp. at 483.

In calculating lost profits, some courts have awarded a flat damage amount when considering the unauthorized receipt and televised broadcast of a cable program by a commercial establishment, see, e.g., Home Box Office v. Gee-Co., Inc., 838 F. Supp. 436, 440 (E.D. Mo. 1993); Home Box Office v. Champs of New Haven, Inc., 837 F. Supp. 480, while others have assessed damages based on the number of patrons in the commercial establishment during the broadcast. See, e.g., Entertainment by J&J, Inc. v. Mama Zee Rest. & Catering Servs., Inc., 2002 U.S. Dist. LEXIS 8802, *10 (awarding $50.00 per patron); Time Warner Cable of New York City v. Googies Luncheonette, Inc., 77 F. Supp. 2d 485, 489-90 (S.D.N.Y. 1999) (same); Time Warner Cable of New York City v. Taco Rapido Restaurant, 988 F. Supp. at 111 (same); Kingvision Pay-Per-View Corp. v. Prime Time Saloon, Inc., No. 95 CV 1422, Report and Recommendation of Levy, M.J. (E.D.N.Y. Sept. 30, 1996) (awarding $50.00 per patron plus a $10.00 per patron cover charge), adopted by Order of the Honorable David G. Trager (E.D.N.Y.

8

October 21, 1996); Cablevision Sys. Corp. v. 45 Midland Enters., Inc., 858 F. Supp. 42, 45 (S.D.N.Y. 1994) (awarding $50.00 per patron).

Plaintiff asserts that there are a number of components to the pecuniary loss suffered here, including lost sublicense fees, lost admission charges, and loss of good will. Here, plaintiff not only lost the sublicense fee that it would have been entitled to had the defendant entered into an authorized agreement to broadcast the Event, but given that there were at least forty-nine (49) patrons present during the unauthorized broadcast, plaintiff also lost the admission fees normally charged by Kingvision from the individual patrons.[7]

In addition, plaintiff argues that this theft of its services deprives plaintiff of its good will, reputation, and business investment and, as a result, has caused and continues to cause plaintiff to lose as customers those establishments who cannot attract paying patrons when the Event is televised in establishments that charge no fee or charge a fee that is considerably less than the fees demanded by plaintiff. Plaintiff also argues that this type of theft has an impact not only on the goodwill of plaintiff, but also on the entertainment and movie industries in general. Accordingly, plaintiff argues that all of these factors should be considered by the court in fixing damages at the maximum statutory amount of $10,000.00.

3. Enhanced Damages

Plaintiff also seeks enhanced statutory damages pursuant to Section 605(e)(3)(C)(ii),

---

[7] Although plaintiff has not provided any evidence as to the price it charged commercial establishments to broadcast the Event, the Court concludes that a fifty dollar per patron charge is appropriate. See Time Warner Cable of New York City v. Googies Luncheonette, Inc., 77 F. Supp. 2d at 490 (stating that to the extent the $50.00 per patron sum reflects a "greater amount than the plaintiff would have legitimately obtained in that not every patron would have ordered the match individually, whatever extra it represents can be seen to encompass the defendant's profits on the sale of food and drink").

which provides for additional awards of up to a maximum of $100,000.00 for all willful violations. The statute permits enhanced damages where the violation was committed willfully and for purposes of private financial gain. See Joe Hand Promotions v. Burg's Lounge, 955 F. Supp. 42, 44 (E.D. Pa. 1997) (awarding $1,000.00 in statutory damages under § 605(e)(3)(C)(i)(II), plus an additional $1,000.00 based on the willful nature of the violation under § 605(e)(3)(C)(ii) where defendants were found to have broadcast a boxing event in their respective taverns); Home Box Office v. Gee-Co, Inc., 838 F. Supp. at 439 (awarding statutory damages of $2,000.00, increased by $2,000.00 for willfulness under 47 U.S.C. § 553, plus $1,000.00 for willfulness under § 605(a), where defendant displayed a boxing match to sixty patrons in his bar); Newschannels Corp. v. Koplik, 903 F. Supp. 333, 334 (N.D.N.Y. 1995) (awarding increased damages where defendant was found to possess six cable decoders and finding that defendant behaved willfully and with the hope of financial gain).

This section clearly applies to persons or entities which operate commercial establishments such as bars, taverns, and restaurants that exhibit unauthorized programming to its patrons. See Time Warner Cable of New York City v. Taco Rapido Restaurant, 988 F. Supp. at 112.

Willful behavior under the statute has been interpreted to include "'disregard for the governing statute and an indifference to its requirements.'" ON/TV of Chicago v. Julien, 763 F.2d 839, 844 (7th Cir. 1985) (quoting TransWorld Airlines, Inc. v. Thurston, 469 U.S. 111, 127 (1985)). Courts may draw an inference of willfulness from a defendant's failure to appear and defend an action in which the plaintiff demands increased statutory damages based on allegations of willful conduct. See Fallaci v. The New Gazette Literary Corp., 568 F. Supp. 1172, 1173

10

(S.D.N.Y. 1983).

Here, it is clear that defendant intercepted and televised the Event without entering into a licensing agreement with plaintiff or paying fees to plaintiff. (Compl. ¶¶ 36-38). To do so, defendant must have utilized an authorized decoder, illegally transferred an authorized decoder to the location, or illegally altered cable service to bring the signal to the restaurant. According to plaintiff's uncontradicted submissions, the Event could not have been mistakenly or innocently intercepted. (Westrich Aff. ¶ 9).[8] See Time Warner Cable of New York City v. Googies Luncheonette, Inc., 77 F. Supp. 2d at 490 (stating that "[s]ignals do not descramble spontaneously, nor do television sets connect themselves to cable distributions systems"). The defendant then televised the Event to patrons who were not required to pay the admittance fee customarily charged by plaintiff under its sublicense agreement, but who purchased meals or drinks from defendants while viewing the Event. Indeed, it is evident that El Emperador was able to draw patrons into its establishment by offering them the ability to view, without charge, a boxing match that would otherwise cost an individual viewer approximately fifty dollars. Thus, El Emperador's exhibition of the Event on a projection screen television, very likely led to an increase in patrons and profits from food and drinks sold. See Time Warner Cable of New York City v. Googies Luncheonette, Inc., 77 F. Supp. 2d at 490-91. Thus, the evidence indicates that defendant acted willfully in illegally intercepting the Event, and that it did so for private financial gain.

If statutory damages were assessed at the rate of $50.00 per patron as some courts have done, this would result in an award of only $2,450.00 in lost revenue based on the 49 patrons

---

[8]Citations to "Westrich Aff." refer to the affidavit of Donna Westrich, dated February 6, 2002, attached to Pl.'s Mem.

11

present at the Event, which is similar to the damages often imposed against individuals who have received unauthorized programming in their own homes. See, e.g., Time Warner Cable v. Baker, No. 96 CV 903, Report and Recommendation of Gold, M.J. (E.D.N.Y. Apr. 9, 1998) (assessing $1,500.00 against each of three defaulting defendants, pursuant to Section 605, where defendants used a single converter in their homes for a relatively short period of time and where there was no evidence that defendants were wealthy, recidivists, or sellers of converters), adopted by Order of the Honorable Frederic Block (E.D.N.Y. May 19, 1998); Time Warner Cable v. Jones, No. 96 CV 4367, Report and Recommendation of Gold, M.J. (E.D.N.Y. Mar. 26, 1998) (awarding to plaintiff $2,000.00 for each of several defaulting defendants where the evidence with respect to pecuniary loss was either limited or speculative), adopted by Order of the Honorable Charles P. Sifton (E.D.N.Y. May 22, 1998).

This Court finds that this amount understates the seriousness of defendant's conduct here, particularly since, as plaintiff contends, it has suffered intangible losses in the form of "business investment, business opportunities . . . and goodwill." Am. Tele. & Comm. Corp. v. Floken, Ltd., 629 F. Supp. 1462, 1466 (M.D. Fla. 1986). Moreover, if damages were imposed solely under Section 605(e)(3)(C)(i)(II), that would not prove to be a sufficient award of damages since a simple disgorgement of profits lacks the incentive necessary to deter in the future the type of conduct engaged in by El Emperador. Specifically, legitimate commercial establishments may be unwilling and unable to compete financially with establishments such as defendant's who offer the stolen programming to their customers for no fee or a reduced fee. Defendant's acts similarly damage plaintiff's goodwill and ability to control and negotiate for the rights to transmit the Event.

Given all of these factors and the fact that the evidence demonstrates that defendant acted willfully in illegally intercepting the Event under circumstances that warrant imposition of enhanced damages under Section 605(e)(3)(C)(ii), it is respectfully recommended that plaintiff be awarded statutory damages of $2,450.00, plus an additional $10,000.00[9] in enhanced damages, for a total of $12,450.00.

4. Costs

Pursuant to Section 605(e)(3)(B)(iii), plaintiff is also entitled to an award of costs. See 47 U.S.C. § 605(e)(3)(B)(iii). Plaintiff's counsel seeks $510.00 in costs from the defendants.[10] (Pl.'s Mem. at 18). In support of that request, plaintiff has submitted an affidavit from Donna K. Westrich, attesting to the payment of $275.00 to the auditor for his services. (Westrich Aff. ¶ 6). In addition, plaintiff seeks reimbursement for filing fees of $150.00 and service of process fees in the amount of $85.00 from defendant. (Lonstein Aff. ¶ 36).

The taxable costs for which a party may seek reimbursement include service of process fees and filing fees. See 28 U.S.C. 1920; Fed. R. Civ. P. 54. However, there is no provision awarding investigative costs. Kingvision Pay-Per-View Ltd. v. Cardona, No. 03-3839, 2004 U.S. Dist. LEXIS, at *12 (S.D.N.Y. June 30, 2004) (citations omitted). Accordingly, the Court

---

[9]See Cablevision Systems New York City Corp. v. Flores, No. 01-9351, 2001 U.S. Dist. LEXIS 9351 (S.D.N.Y. July 6, 2001) (awarding $10,000.00 in enhanced damages based on the need for deterrence, defendant's willful conduct, and the defendant's failure to appear); see also Time Warner Cable of New York City v. Taco Rapido Restaurant, 988 F. Supp. at 112 (increasing damages by $5,000.00 where defendant exhibited illegal telecast to over seventy patrons on two television sets).

[10]Although the statute also provides for an award of attorney's fees, plaintiff's counsel does not appear to be requesting fees in this application.

13

respectfully recommends that plaintiff's request for auditor's fees be denied. However, based on the supporting affidavits, this Court finds the amount requested for service of process and filing fees to be reasonable and respectfully recommends that plaintiff be awarded $222.50 in costs from defendant.

5. Interest

Plaintiff also seeks an award of prejudgment interest. Section 605 of the Communications Act does not specifically provide a statutory basis for such an award. However, discretionary awards of prejudgment interest have been awarded in this circuit, notwithstanding a statute's silence on the issue of interest, where the court has found that such an award was necessary to compensate the aggrieved party. See Wickham Contracting Co. v. Local Union No. 3, International Brotherhood of Electrical Workers, 955 F.2d 831, 834 (2d Cir. 1992).

Here, the Court finds that the award of statutory damages and enhanced damages, which are in part punitive, is sufficient to make the plaintiff whole under the circumstances and the undersigned sees no reason for an award of interest. See id. at 835 (stating that prejudgment interest should not be awarded "if the statutory obligation on which interest is sought, is punitive in nature"); see also Entertainment by J&J Inc. v. Miraldo Rest., Inc., No. 01 CV 10832, 2003 U.S. Dist. LEXIS 11361, at * 16 (S.D.N.Y. Apr. 23, 2003).

Accordingly, this Court respectfully recommends that plaintiff's request for an award of prejudgment interest be denied.

## CONCLUSION

In summary, this Court respectfully recommends that plaintiff be awarded $12,450.00 in

damages, plus costs in the amount of $222.50, for a total of $12,672.50.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with a copy to the undersigned, within ten (10) days of receipt of this Report. Failure to file objections within the specified time waives the right to appeal the District Court's order. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72; Small v. Secretary of Health and Human Servs., 892 F.2d 15, 16 (2d Cir. 1989).

The Clerk is directed to mail copies of this Report and Recommendation to the parties.

**SO ORDERED.**

Dated: Brooklyn, New York
July 6, 2005

/s/ Cheryl Pollak
Cheryl L. Pollak
United States Magistrate Judge
Eastern District of New York